UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. A. No. 25-cr-251 (JEB) |
| JAN CAREY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

For the reasons set forth in the attached memorandum in support, the United States of America, by and through undersigned counsels, opposes the Defendant's Motion to Dismiss. A Proposed Order accompanies this motion.

Dated:     November 14, 2025
           Washington, D.C.

                                        Respectfully submitted,

                                        JEANINE FERRIS PIRRO
                                        United States Attorney

                              By:    /s/ Rajbir S Datta
                                     Rajbir S. Datta; N.Y. Bar 5206073
                                     Travis Wolf; N.Y. Bar 5483243
                                     Assistant United States Attorneys
                                     United States Attorney's Office for the
                                     District of Columbia
                                     601 D Street, NW
                                     Washington, D.C. 20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JAN CAREY | )    Crim. A. No. 25-cr-251 (JEB) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES'**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by undersigned counsel, submits this Memorandum of Law in Support of the United States' Opposition to Defendant's Motion to Dismiss. Defendant makes two arguments for dismissal of the criminal information; first, the charged regulations are inapplicable to Defendant's conduct, and, in the alternative, are ambiguous; and, second, the prosecution of this case is specifically vindictive to this Defendant. Defendant's arguments are without merit.

The Federal Regulations serve a legitimate purpose, that is, to mitigate hazards to public safety involving dangerous activity using dangerous materials and without the necessary safeguards to protect others. Defendant's conduct falls squarely within the conduct violative of this regulation.   Moreover, Defendant's prosecution is based upon his conduct and not upon his speech and thus not vindictive. Accordingly, Defendant's motion should be denied. In support of this opposition, the Government states the following:

## BACKGROUND

On or about August 25, 2025, Defendant Jan Carey, while in Lafayette Park just north of the White House, placed an American flag on the ground and using a lighter, a plastic bottle of isopropyl alcohol, bug spray as an accelerant and without utilizing any protective barriers or extinguishers to protect any bystanders or other pedestrians, set the flag on fire on the sidewalk feet from other individuals. D.E. 12-2.[1] Defendant was neither in possession of any items designed to contain (such as a metal nonflammable receptacle) nor extinguish the fire to protect public safety.

 

Screenshots from publicly accessible video on YouTube showing the lack of safety measures.
*See also* https://youtube.com/shorts/L8rYQKFcPuE?si=5u3HeC3r8w9PZznc.

---

[1] Defendant has claimed this action was taken in response to the President's Executive Order. *See* https://www.whitehouse.gov/presidential-actions/2025/08/prosecuting-burning-of-the-american-flag/

Furthermore, Defendant placed the plastic bottle of isopropyl alcohol next to the open flame while bystanders were in close physical proximity to the open fire.

 

Screenshots from publicly accessible video on YouTube showing the bottle of isopropyl alcohol and bug spray accelerant near the open flame and pedestrians in proximity of the fire. *See also* https://youtube.com/shorts/L8rYQKFcPuE?si=5u3HeC3r8w9PZznc.



Screenshot from publicly accessible video on YouTube.
*See* https://www.youtube.com/watch?v=n0SnVKEsepA

Officers with the United States Secret Service and the National Park Service approached Defendant and were able to extinguish the uncontrolled fire. Defendant was then arrested for setting a fire in an unsafe manner and charged with a violation of 18 U.S.C. § 1865(a), 54 U.S.C. §100751(c), and 36 C.F.R. §§ 2.13(a)(1); (a)(3). D.E. 1, 14-1 (second amended information). Search incident to arrest, law enforcement officers located the following items on and around Defendant's person: a "Hot Shot Ant, Roach & Spider Killer" pressurized bug spray canister, a "BIC" lighter, one plastic bottle of 70% isopropyl alcohol that was partially melted, and the remains of the burned American flag. Defendant was taken into custody and released. Defendant was cited, as routine practice, for violations of the Federal Regulations involving conduct within jurisdiction of the National Park Service under violation numbers E2393226 and E2393227.



## PROCEDURAL HISTORY

On August 27, 2025, the United States charged Defendant by Information with (1) lighting a fire in an undesignated area without the authority of the National Park Service Superintendent; and (2) lighting a fire in a manner that created a public safety hazard each in violation of 18 U.S.C. § 1865(a), 54 U.S.C. §100751(c), and 36 C.F.R. § 2.13 (a)(3). D.E. 1; *see also* D.E. 14-1.

Defendant was arraigned on September 17, 2025, and released on bond. On October 9, 2025, the United States filed an amended information. D.E. 10. On October 24, 2025, Defendant

filed a Motion to Dismiss the Information. D.E. 12. On November 10, 2025, the United States filed

a second amended information. D.E. 14-2.

## **LEGAL STANDARD**

"In our criminal justice system, the Government retains 'broad discretion' as to whom to

prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*,

457 U.S. 368, 380 n.11 (1982)). Once a discretionary prosecutorial decision has been made, it is

subject to a "'presumption of regularity.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996)

(quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)); *see also United States v.*

*Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (holding that prosecutor charging "decisions are

presumed to be proper absent clear evidence to the contrary" (citing *Armstrong*, 517 U.S. at 464)).

In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused

committed an offense defined by statute, the decision whether or not to prosecute, and what charge

to file or bring . . . generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S.

357, 364 (1978). Prosecutorial "discretion is essential to the criminal justice process," and a

defendant thus must show "exceptionally clear proof" of an improper motive before the court will

infer that the discretion has been abused. *McClesky v. Kemp*, 481 U.S. 279, 297 (1987).

Code of Federal Regulations

Persons enjoying the national parks of the United States are entitled to their current and

future use and enjoyment of such property and any risk of that use and enjoyment is subject to

government regulation. 38 C.F.R. § 1.1. The government imposed general regulations with the

goal of preserving the environment and integrity of our national parks. *See* Title 36, Parts 1 – 5;

---

[2] The government filed the Second Amended Information to address drafting errors in the previous
versions, but the Information is substantively the same previously drafted.

and 13. Those regulations are generally enforced but are modified, as appropriate based upon the specific nature and needs of specific parks. *See* Title 36, Part 7.

Selective Prosecution

A defendant seeking to establish selective prosecution must overcome the presumption of regularity by providing "clear evidence" that the government's charging decision "had a discriminatory effect" and "was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 464-65 (quotations omitted). This burden is a "demanding" standard, as it was intended to be, because it necessarily "asks a court to exercise judicial power over a 'special province' of the Executive." *Id.* at 463-64.

First, to demonstrate a "discriminatory effect," a defendant must show that "similarly situated individuals" were not prosecuted. *Id.* at 464.  A person has "engaged in similar conduct," and is therefore "similarly situated" for purposes of a selective prosecution claim, *United States v. Blackley*, 986 F. Supp. 616, 617 (D.D.C. 1997), "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them," *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). Such legitimate prosecutorial factors include, among other things, the defendant's "relative culpability" and "the strength of the case against particular defendants." *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009). Stated differently, a person is "similarly situated" for selective prosecution purposes only if he "committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant."

*United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000); *see also United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (same). This analysis is necessarily sensitive not only to the nature of the criminal conduct but the precise way in which the crime was carried out. Accordingly, courts look to the specific factual allegations at hand when assessing selective prosecution claims. *See, e.g.*, *Smith*, 231 F.3d at 811 ("[F]or [the defendants] to establish selective prosecution, they must show that there are other individuals who voted twice or more in a federal election by applying for and casting fraudulent absentee ballots, *and* who forged the voter's signature or knowingly gave false information on a ballot affidavit or application, *and* that the voter whose signature those individuals signed denied voting, *and* against whom the government had evidence that was as strong as the evidence it had against [the defendants].").

Second, to show a "discriminatory purpose," a defendant must demonstrate "that discriminatory intent was a 'motivating factor in the decision' to enforce the criminal law against the defendant." *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (citation omitted); *see also Wayte*, 470 U.S. at 610 ("Discriminatory purpose implies more than intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' and not mere 'in spite of,' its adverse effects on an identifiable group." (cleaned up) (citation omitted)).[3]

<u>Vindictive Prosecution</u>

The vindictive prosecution doctrine "precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a

---

[3] The D.C. Circuit in *Frederick Douglass Foundation, Inc. v. District of Columbia*, held that discriminatory intent is not required in a selective prosecution claim based on viewpoint discrimination under the First Amendment. 82 F.4th 1122, 1144-45 (D.C. Cir. 2023). To the extent the defendant's selective prosecution claim is based on anything other than the First Amendment, discriminatory intent is required. *See Alcaraz-Arellano*, 441 F.3d at 1264.

criminal prosecution." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (quoting *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001)); *see also United States v. Meadows*, 867 F.3d 1305, 1311 (D.C. Cir. 2017) (same). As has been noted with respect to the presumption of regularity, "prosecutors have broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *Slatten*, 865 F.3d at 799. "Thus, to succeed on a claim of vindictive prosecution, a defendant must establish that the increased charge" or other punitive prosecutorial action "was 'brought *solely* to 'penalize' [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *Id.* (quoting *Goodwin*, 457 U.S. at 380 n.12).

A defendant can show "actual vindictiveness" by presenting "'objective evidence' that the prosecutor's actions were designed to punish a defendant for asserting his legal rights." *Maddox*, 238 F.3d at 446 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). "Such a showing is normally 'exceedingly difficult to make.'" *Id.* (quoting *Meyer*, 810 F.2d at 1245); *see also Meadows*, 867 F.3d at 1311 (same). Specifically, a defendant "must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) [the defendant] would not have been prosecuted except for the animus." *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (quoting *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)).

A defendant can establish a rebuttable "presumption of vindictiveness" by pointing to a sequence of events that establishes "a realistic likelihood of 'vindictiveness'" that would be "applicable in all cases." *Goodwin*, 457 U.S. at 381, 384; *see also Blackledge v. Perry*, 417 U.S. 21, 27 (1974). Such a "realistic likelihood" typically occurs only in a narrow set of circumstances, where a defendant exercises a right and the prosecutor responds by "upping the ante," *i.e.*,

increasing the severity of the charges the defendant is facing, in a manner that would be likely to deter other defendants from exercising a similar right under the circumstances. *Blackledge*, 417 U.S. at 27-28; *see also Goodwin*, 457 U.S. at 384.   Even then, the mere possibility of vindictiveness is insufficient to trigger a presumption; instead, a court should consider "the timing of the prosecutor's actions" as well as the "nature of the right" that the defendant has exercised. *Goodwin*, 457 U.S. at 381-82.   Thus, for example, "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision," since the latter necessarily occurs at a time when "the prosecutor's assessment of the proper extent of prosecution may not have crystallized."   *Id.* at 381.   Accordingly, the concerns animating the presumption typically arise only when the defendant's exercise of a right "require[s] duplicative expenditures of prosecutorial resources," challenges a decision in which the prosecutor has a "personal stake" that would prompt him to engage in "self-vindication," or triggers an "institutional bias" against the exercise of the right.   *Id.* at 383.   In the rare cases when a presumption of vindictiveness applies, the Government may rebut it by presenting "objective evidence that its motive in prosecuting the defendant was not vindictive." *Safavian*, 649 F.3d at 692.

Discovery

To obtain discovery in support of a claim of selective or vindictive prosecution, the defendant must meet a standard that is "correspondingly rigorous" and that "should itself be a significant barrier to the litigation of insubstantial claims," as such discovery "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy." *Armstrong*, 517 U.S. at 464, 468; *see also United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) (summarily reversing unfounded selective-prosecution discovery order which itself "threaten[ed]

the performance of a core executive constitutional function") (quotations omitted). Under that standard, the defendant must put forward "some evidence tending to show the existence of the essential elements of the defense." *Armstrong*, 517 U.S. at 468 (citation omitted).

A defendant is not entitled to discovery on a claim of selective prosecution absent a "colorable showing," *Id.* at 471, on both prongs of the selective prosecution standard. *United States v. Blackley*, 986 F. Supp. 616, 617-18 (D.D.C. 1997). If a defendant fails to make the requisite showing as to either prong, he is not entitled to discovery, much less to the extreme remedy of dismissal of the indictment. *See Bass*, 536 U.S. at 863; *Att'y Gen. of the United States v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982). Notably, the *Armstrong* standard is more stringent than the materiality standard for ordinary discovery in Federal Rule of Criminal Procedure 16(a)(1)(E). *United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000).

The standard for obtaining discovery for a vindictive prosecution claim is analogous to the "rigorous" standard for selective prosecution. *See United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 175 (D.D.C. 2020) (citing *Armstrong*, 517 U.S. at 464). Accordingly, a defendant is not entitled to discovery on a claim of vindictive prosecution unless he can present "some objective evidence tending to establish the vindictive prosecution defense." *Id.*

## **ARGUMENT**

A.  Section 2.13 is applicable to Defendant's conduct.

The purpose of the Federal Regulations governing the jurisdiction of the National Park Service is to "provide for the proper use, management . . . and protection of persons, [and] property within areas under the jurisdiction of the National Park Service." 38 C.F.R. § 1.1(a). The goal of these measures is the protection of the public's use and unimpaired enjoyment of the United States' national parks. 36 C.F.R. § 1.1(b).

Recognizing that fires can cause a public safety hazard; Section 2.13 governs the use of fires in any areas within the jurisdiction of the National Park Service. Specifically, the regulations prohibit "[l]ighting or maintaining a fire, except in designated areas or receptacles and under conditions that may be established by the superintendent." Section 2.13(a)(1). The regulations also prohibit "[l]ighting, tending, or using a fire, stove or lantern *in a manner* that threatens, causes damage to, or results in the burning of property, real property, or park resources, *or creates a public safety hazard*." 36 C.F.R. § 2.13(a)(3) (emphasis added).

While Defendant argues that Section 2.13 is not applicable and that his conduct should be governed by the specific regulations under Section 7.96 – that the specific regulations supplant the general regulations – is simply inaccurate based upon a plain reading of the regulations and its structure. A ruling otherwise, as discussed below, would lead to conduct that would result in hazards to public safety, for which the Government has a compelling interest in protecting.

### 1. The Specific Regulations Under Part 7 Do Not Supplant the General Regulations.

If the specific regulations supplanted the authority of the general regulations, it would render the general regulations superfluous. The general regulations govern all manners of activity – fishing, fires, picnicking, camping, pets, winter activities, boating, alcohol use, solid waste disposal, vehicle traffic and other activities that have general applicability to all of our national parks to ensure the parks are maintained and secure for current and future use. *See generally* 38 C.F.R. Parts 2 – 11; 38 C.F.R. § 1.1(b).

The special regulations importantly note that certain national parks require more specific regulations governing their respective locations which include but are not limited to, wildlife protection, hunting, camping, and other activity with a focus on protecting the specific needs of the specific parks in consideration given their unique needs. For example, the needs of the Virgin

Islands Coral Reef National Monument prohibit the collection of marine wildlife, fruits, rocks, water wildlife including conch, to protect the unique marine wildlife that is present as well as to protect the physical and environmental integrity of the park. Section 7.46(a).

The specific regulations governing the needs of the Virgin Islands Coral Reef National Monument would not be applicable to, for example, the Appalachian National Scenic Trail, Section 7.100, Yellowstone National Park, Section 7.13, or even the National Capital Region, Section 7.96. This is the reason for the specific regulations – to uniquely address the specific needs of each park to individually address park-specific issues including wildlife, the environment, physical integrity, safety, and other considerations – while ensuring general applicability of the general regulations.

Furthermore, the specific regulations, except in certain circumstances related to certain parks, do not make extensive references to the use of fires within their jurisdiction outside of the general regulations. Therefore, if the specific regulations supplant the general regulations as Defendant would have this Court rule, the use of fires in any manner without regard to public safety would be appropriate in the National Capital Region. That appears on its face to be clearly incorrect. A person of reasonable intelligence would read the regulations governing the jurisdiction of the National Park Service as governing general conduct while also acknowledging that national parks and monuments in different areas of the United States have specific needs that are unique to their respective locations and purposes requiring specific regulations applicable to the specific parks.

Thus, the special regulations support the general regulations to provide notice to the public of what conduct is necessary in specific national parks to protect, amongst other issues, wildlife, environmental integrity and public's future use and enjoyment.

2. **The Public Gathering Permit Referenced by Defendant Supports the Governments Argument Involving the Applicability of Section 2.13 to Defendant's Conduct.**

Section 2.13 is the appropriate charge governing Defendant's conduct. Defendant provides an exhibit which is a permit to burn a flag involving no more than five participants. D.E. 12-3. The permit was authorized pursuant to Section 7.96 which Defendant claims supports his argument that the specific regulations solely govern the conduct in national parks within the National Capital Region. However, as discussed above this contention is erroneous and would make all fires, even those without safety regulations, permissible in any park in the National Capital Region. That would be an erroneous interpretation of the regulations.

Despite Section 7.96 imposing no regulations on fires outside the camping context, the permit explicitly required certain safety regulations to protect the public. D.E. 12-3.[4] The permit was for an estimated five (5) persons and permitted a metal trash can, orange cones, fire extinguishers, yellow caution tape, and acknowledged the burning of a flag. *Id*. at p. 2. The explicit purpose of this equipment was "[f]or life and safety due to the nature of the activity[.]" *Id.* The safety requirements required the flag, for containment purposes, be burned in a metal trash can, that there be at least two pressurized water or fire extinguishers, that "[c]ombustible or flammable liquids or other hazardous materials, shall not be used to aid the ignition of the flag," and that caution tape, safety personnel and a perimeter of 20 feet from the fire would be used. *Id*. at p. 4-5.

In other words, the permit which Defendant claims supports his argument that only Section 7.96 is applicable to the Defendant's conduct is simply erroneous. The permit, while issued

---

[4] Section 7.96(g)(2)(i) does not require a permit for demonstrations less than 25 people "provided that the other conditions required for the issuance of a permit are met[.]" The United States does not argue that a permit was required for the Defendant's demonstration, but as detailed more fully in this section, the conditions required for a permit if one was requested, would also include reference to the fire safety regulations under Section 2.13.

pursuant to Section 7.96, was done so because the conduct occurred in a park within the National Capital Region. The safety restrictions were not imposed pursuant to Section 7.96, because none, outside of camping or living accommodations, exist. Given the lack of specifically different fire regulations in Section 7.96, the permit included the general regulations under Section 2.13 to regulate activity that would "create[] a public safety hazard" involving fires. *See* Section 2.13(a)(3).

Therefore, this exhibit clearly supports the argument that the general regulations apply even to locations that also have additional specific regulations under Part 7. Holding otherwise would render the safety considerations in this permit irrelevant because Section 7.96 does not reference fires outside of the camping and "living accommodation" context.

This is the case because "[t]he regulations contained in … Part 7 … are specific regulations prescribed for *specific park areas*. Those regulations may amend, modify, relax, *or make more stringent* the regulations contained in Part 1 through 5 and Part 12 of this chapter." Section 1.2(c) (emphasis added).[5] A plain reading of Section 7.96 in fact imposes added restrictions on making a fire within the National Capital Region. *See* Section 7.96(g)(5)(vi) (each related to camping and living accommodations). At no time does Section 7.96 "relax" the Part 2 general regulations related to fires in the National Capital Region. That is because fires can cause a hazard to public safety further supporting the Government's argument that the general and specific regulations complement each other depending on the needs of specific parks.

As such, there is no uncertainty as to how the regulations are applied. All parks within the jurisdiction of the National Park Service are governed by the general regulations and, given the

---

[5] In their motion, Defendant conveniently fails to reference the "or make stringent the regulations" language in Section 1.2(c) that is directly applicable to their argument involving the interaction between the general and specific regulations.

specific needs, certain parks are identified within the specific regulations as subject to special regulations that can "amend, modify, relax, or make more stringent the regulations." Section 1.2(c). The fact that Section 7.96 did not relax the fire restrictions of Part 2 as applied in the National Capital Region, indicates the general regulations under Part 2 are applicable to Defendant's conduct.

### B. Defendant is Being Prosecuted for his Criminal Conduct in Violation of the Federal Regulations to Protect Public Safety and Not for his Speech.

Defendant's First Amendment and vindictive prosecution arguments are red herrings for this Court. Defendant is being prosecuted for igniting a fire in a manner that threatened public safety and not for his First Amendment rights nor his apparent opposition to the President of the United States or the President's Executive Order.[6]

Here, Defendant has presented no objective evidence indicating actual vindictiveness designed to punish the Defendant for his conduct. *See Maddox*, 238 F.3d at 446 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). In fact, the evidence Defendant has provided in his Motion only supports the Government's position – initiating fires in a National Park using highly flammable substances and accelerants with complete disregard for public safety – is a violation of the regulations. *See* D.E. 12-3. Defendant has not cited one case where an individual similarly situated to the Defendant – using a pressurized canister and highly flammable liquid – ignited a fire in an uncontained area and was not prosecuted.

To prevail, Defendant must show the Government has a genuine animus against the Defendant and would not have been prosecuted but for that animus. *See United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (quoting *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)).

---

[6] https://www.whitehouse.gov/presidential-actions/2025/08/prosecuting-burning-of-the-american-flag/

The only evidence Defendant can point to is alleged social media posts from the President and audio from body worn camera footage from officers on scene at the time of the incident. However, neither of these factors support Defendant's argument.

The Government has a discretionary prosecutorial decision that is subject to a "'presumption of regularity.'" *Armstrong*, 517 U.S. at 464 (quoting *Chem. Found., Inc.*, 272 U.S. at 14-15). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring . . . generally rests entirely in his discretion." *Hayes*, 434 U.S. at 364. Prosecutorial "discretion is essential to the criminal justice process," and a defendant thus must show "exceptionally clear proof" of an improper motive before the court will infer that the discretion has been abused. *Kemp*, 481 U.S. at 297.

Here, Defendant advances only one argument – that the President's Executive Order involving flag burning and the President's social media communication displays actual vindictiveness against *this* particular Defendant. That is simply incorrect.

First, Defendant has not presented any objective evidence that this prosecution is designed to punish *this* particular Defendant for asserting his legal rights. *See Maddox*, 238 F.3d at 446. Specifically, the Defendant "must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) [the defendant] would not have been prosecuted except for the animus." *Sanders*, 211 F.3d at 717 (quoting *Koh*, 199 F.3d at 640). No such evidence exists. As discussed previously, Defendant is being prosecuted for igniting a fire in a National Park outside a designated area or receptacle without authorization of the superintendent and/or doing so in a manner that created a public safety hazard.

Second, Defendant's references to the President's social media communications and comments made by law enforcement captured on body worn camera do not bear on this prosecution. The President's social media accounts do not dictate the independent and discretionary decisions of federal prosecutors any more than comments from law enforcement captured on body worn camera do as they determine what action to take in response to criminal activity. Defendant, as discussed earlier, is not being prosecuted for his First Amendment activity. Defendant is also not being prosecuted based upon verbal comments captured on body worn camera between law enforcement officers as they assessed the investigation and were evaluating next steps immediately following the Defendant's conduct. An independent review of the evidence was evaluated by the undersigned counsels for the United States Attorney's Office for the District of Columbia which resulted in the charges Defendant faces.

Third, the President's Executive Order specifically notes "Notwithstanding the Supreme Court's rulings on First Amendment protections, the Court has never held that American Flag desecration conducted in a manner that is likely to incite imminent lawless action or that is an action amounting to "fighting words" is constitutionally protected.  See *Texas v. Johnson*, 491 U.S. 397, 408-10 (1989)." Here, there is no allegation in the charging document that the Defendant's action was conducted in a manner likely to incite lawless action or that the action amounting to fighting words. The fact that the charging document has never alleged Defendant engaged in conduct related to the Executive Order – that the conduct amounted to fighting words or likely to incite imminent lawless action – squarely indicates this prosecution is routine and, while not usual for the National Capital Region, was not vindictive against *this* Defendant.

Fourth, Defendant's prosecution under 18 U.S.C. § 1865 carries with it a penalty of six (6) months in prison and/or a fine for his conduct of lighting a fire in a National Park that was not

18

done in a designated area or receptacle under the conditions of the superintendent and was done in a manner that creates a public safety hazard. This is contrary to what the Defendant claims is vindictive as it complies with the evidence, the law, and not with any other extraneous directives. In fact, this is the same misdemeanor charge others would face if the same manner of lighting a fire in an unsafe manner was conducted in the National Capital Region or, in the countless other national parks across the country. That is the reason Defendant was issued a citation by the National Park Service and released in the normal course. Defendant's conduct, having occurred in any other national park under the same manner, would have resulted in the same citations being issued under Section 2.13 due to the public safety implications.

As such, Defendant's argument that this prosecution is vindictive carries no weight based upon the facts of the case, the law, and the federal regulations. The Government acknowledges the politically charged environment in which we currently reside; however, the nature of that environment and the passionate feelings of the public does not permit the public to engage in criminal conduct that causes a risk to public safety.

The Government has a compelling interest in protecting the safety of visitors of our national parks and to preserve the integrity of the parks for current and future use. The Defendant's manner of lighting a flag on fire using a highly flammable substance, with no protective measures, caused a hazard to public safety that fits squarely within violations of Sections 2.13(a)(1) and (a)(3).

**C. Defendant is Not Entitled to Discovery Absent a Colorable Showing of Vindictive Prosecution**

The standard for obtaining discovery for a vindictive prosecution claim is analogous to the "rigorous" standard for selective prosecution. *See Oseguera Gonzalez*, 507 F. Supp. 3d at 175 (citing *Armstrong*, 517 U.S. at 464). Defendant is not entitled to discovery on a claim of selective

prosecution absent a "colorable showing," *Armstrong*, 517 U.S. at 471, on both prongs of the selective prosecution standard. *Blackley*, 986 F. Supp. at 617-18.

To support such an argument, the Defendant must demonstrate that (1) other, similarly situated individuals, were not prosecuted, *Armstrong*, 517 U.S. at 464, and (2) that discriminatory intent was the motivating factor in initiating the criminal prosecution, *Alcaraz-Arellano*, 441 F.3d at 1264. As discussed previously, none of which exist here.

First, Defendant cites to instances where individuals were permitted to light fires and candles in Lafayette Park; specifically a 2018 permit issued by the National Park Service allowing a group of approximately five individuals to burn a Nazi/Confederate Flag, D.E. 12-2; and, various candlelight vigils, D.E. 12 at p. 9-10. Defendant cannot credibly argue that these events are "similarly situated" to the Defendant.

With regard to the 2018 flag burning demonstration, the individual obtained a permit and was informed of the safety expectations as the Government has previous described above in Section A(2).  Although a permit was not required for demonstrations involving less than 25 persons, the conduct was allowed "provided that the other conditions required for the issuance of a permit are met[.]" 38 C.F.R. § 7.96(g)(2). Those conditions included safety measures to ensure the fire was contained and could be extinguished. *See* D.E. 12-2 at p. 2, 4-5. Defendant has provided no argument that the Defendant is similarly situated to a permit holder engaged in similar action who ensured the protection of the public.

Defendant's conduct is not similarly situated to the other examples involving candlelight vigils. Defendant's fails to provide any evidence of the permits, number of participants, or any safety measures imposed. It strains credulity to argue that an individual lighting an object on fire using an accelerant and a highly flammable substance on a sidewalk with no extinguishing

20

capabilities, or measures to protect bystanders, is "similar situated" as an individual lighting an object on fire in a 30-gallon metal trash can with fire extinguishers let alone individuals holding candles. *See* D.E. 12 at p. 6-7; 12-2 at p. 2, 5-6.

Second, as discussed earlier in Section 2(B), this prosecution was not initiated with animus. This prosecution was initiated because the manner in which the Defendant engaged in his conduct was a hazard to public safety in a National Park and violated 38 C.F.R. F. Supp. § 2.13.

Defendant cannot demonstrate either of the factors supporting discovery related to selective or vindictive prosecution and as such Defendant's Motion should be denied.

\*     \*     \*

## CONCLUSION

For the foregoing reasons, the United States respectfully requests this Court deny Defendant's Motion to Dismiss, Discovery and a Hearing, and rule in favor of the Government.

Dated: November 14, 2025
      Washington, D.C.

             Respectfully submitted,

             JEANINE FERRIS PIRRO
             United States Attorney

             By:    /s/ *Rajbir Datta*
                  Rajbir Datta; N.Y. Bar No. 5206073
                  Travis Wolf; N.Y. Bar No. 5483243
                  Assistant United States Attorneys
                  601 D Street, N.W.
                  Washington, D.C. 20001
                  Phone: (202) 252-7687
                  Email: Rajbir.Datta@usdoj.gov