UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

   UNITED STATES OF AMERICA,
                                        Criminal Case
                        Plaintiff(s),   No. 25-00251 JEB
              v.
                                        Washington, D.C.
   JAN CAREY,
                                        February 2, 2026
                        Defendant(s).

   ------------------------------------------------------------

                         STATUS CONFERENCE
                BEFORE THE HONORABLE JAMES E. BOASBERG
                  UNITED STATES DISTRICT CHIEF JUDGE

   APPEARANCES:

   FOR THE PLAINTIFF(S):   Travis Wolf, Esquire
                           Rajbir Datta, Esquire
                           United States Attorney's Office
                           District of Columbia
                           601 D Street Northwest
                           Washington, D.C. 20004


   FOR THE DEFENDANT(S):   Mara Verheyden-Hilliard, Esquire
                           Nick Place, Esquire
                           Partnership for Civil Justice Fund
                           617 Florida Avenue Northwest
                           Washington, D.C. 20001




   REPORTED BY:            Tammy Nestor, RMR, CRR
                           Official Court Reporter
                           333 Constitution Avenue Northwest
                           Washington, D.C. 20001
                           tammy_nestor@dcd.uscourts.gov

The following proceedings began at 9:58 a.m.:

THE COURT:  Good morning, everyone.

THE COURTROOM DEPUTY:  Good morning.  We are here on the record in criminal matter 25-cr-251, United States of America versus Jan Carey.

Beginning with counsel for the government, if you would please approach the lectern and identify yourself for the record.

Your Honor, Mr. Carey is appearing via Zoom.

THE COURT:  Okay.  Mr. Carey, can you see and hear me okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  Good morning to you.

MR. WOLF:  Good morning, Your Honor.  Travis Wolf for the United States.

THE COURT:  Thank you.

MS. VERHEYDEN-HILLIARD:  Good morning, Your Honor.  Mara Verheyden-Hilliard of the Partnership for Civil Justice Fund, pro bono counsel for Mr. Carey.  With me at counsel table is Mr. Nick Place.  And Mr. Carey is appearing remotely today and waives his right to be physically present.

THE COURT:  Thanks so much.  Good morning to both of you.

Ms. Verheyden-Hilliard, let me start with you.  As I

have ruled, I think there is a basis for you to get discovery. And so I guess my first question is, what do you want and have you discussed with the government possible parameters of discovery?

MS. VERHEYDEN-HILLIARD: We have not had a meet-and-confer with the government at this point. What we would anticipate following Your Honor's ruling is discovery, the scope of which is to explore the decision to prosecute Mr. Carey and whether it was tainted, including evidence that the executive order played a role in the prosecution both categorically and in particular.

And so what we would be looking for is inquiry into communications in this case about the prosecution, about the arrest decisions to paper, ongoing prosecution. That would involve phone texts, emails, call logs, Teams messages. We can see on the body-worn footage and hear on the body-worn footage a number of communications that are occurring.

We would also be seeking material related to the use of the executive order, and that would be directives, policy, communications, guidance, communications describing or proscribing or discussing the manner in which the order would be implemented in prosecutorial decisions.

And we would also be looking for communications of law enforcement personnel communicating in their parallel chain of command with regard to these decisions as they were

playing out.

THE COURT: All right. So in terms of form, it sounds like the first step is via document request, is that correct?

MS. VERHEYDEN-HILLIARD: Yes. I would say though at the onset that we would inquire at this time, because that would be presumably known to the government, the identities of the AUSAs who were in communication with the command officials at the scene, who were on the phone with the arresting officers at the scene. There is discussion of reporting back to the AUSAs who are with the command official, as well as other identity of the other AUSAs who played a role or personnel that played a role in these discussions as they played out including the, you know, custodial arrest and through papering and through this process of ongoing prosecution that is really outside the norm, really identification of anyone who's involved in those decisions regarding commencement or prosecution of Mr. Carey, which we presume is, like, easily available, could be given to us.

And then from there, yes, we would be seeking paper material discovery.

We would ask for perhaps 10 days to provide that by letter to the government, 30 days for their response, and then we would request that their response, to the extent

that they withhold material, provide the basis for the withholding and sufficient information about what is being withheld, that it can be evaluated and that we would have another status maybe 14 days or whatever is appropriate for the Court's calendar after we get responses.

That would just be an initial thought as to a proceeding obviously moving towards an evidentiary hearing at some point.

THE COURT:  Okay.  Thank you.

So, Mr. Wolf, I guess my first question for you is how you wish to proceed here and whether it makes sense to initially confer with the defense so that you can figure out if there are documents that you can produce that you can agree upon.  There also may be some documents you prefer to submit in camera first.  Do you want to give me your position on how we should proceed?

MR. WOLF:  Yes, Your Honor.  I think we would like an opportunity just to speak with the defense -- I mean, I heard loud and clear what defense was asking for here -- just be able to go through item by item and see if there's anything we object to.

And I will say that I was not personally involved in all the higher-up charging decisions, but I do know that in terms of discussions, there's a lot of discussions on, like, the elements and discussions of, you know, trial strategy.

And so I think there would be a request that anything that touches upon what would be work product, that there would be an opportunity to submit those materials in camera for the Court to review and determine whether it's outside the scope of the issue at hand or if it goes more towards attorney or government work product.

So I think that would be a mechanism that we would wish to have set up for any communications that we think are outside of the defense scope.

THE COURT:  All right.  So it seems to me -- okay. Let me ask Ms. Verheyden-Hilliard.  I'm not sure that getting the names of certain people is as important today. I think the idea is that in your requests, you can ask for -- you don't have to pinpoint and say we want emails from person A or person B.  You can say we want all emails that reflect X and Y.

So I'm amenable to the plan of you submitting to the government in 10 days your document requests.  Then what I would do is I would give 30 days for the government to produce, which would include meet-and-confer sessions.

So again, as the government says, if they are saying -- they are talking about documents that discuss how they might prove certain elements and do they need experts, for example, I'm not sure that relates to the motives for prosecution.  And so maybe some of that you would agree

isn't relevant.  But you would have discussions with them.

If you can agree on certain documents, great, they can produce those.  If they believe that others are subject to certain privileges, for example, or aren't relevant and you don't agree to that, they can submit those to me with their reasons why that is so.

I would certainly let you brief this also, and we will see where we go.  I mean, maybe we do need an evidentiary hearing eventually.  Maybe we don't.  We will see how we proceed.

I just -- and you folks are obviously diligent and probably are already on top of this, but it's certainly worth reading the United States versus Abrego Garcia decision --

MS. VERHEYDEN-HILLIARD:  Yes, Your Honor.

THE COURT:  -- by Judge Crenshaw.  And that's at 2025 Westlaw 3002840.

A couple of other cases that I think are worth reading are In Re: Sealed Case, which is a D.C. Circuit case from 1997.  That's 121 F.3d 729.  I think that has some good discussion in particular because it's this circuit.

And I also think that from the Central District of California from 2014, United States versus McGraw Hill Companies, which is 2014 WL 8662657, is also interesting.

Again, I have done some research on the privileges

also, Mr. Wolf, and certainly the Abrego case discusses deliberative process.  You have mentioned work product.  You didn't mention attorney-client.  That's a conceivable privilege.  But I think that those privileges may well be overcome depending on what form the privileges are, whether they are, for example, opinion work product versus ordinary work product.  But simply because you believe there are privileges, those privileges, as I imagine you know, are not absolute and can be overcome, particularly where there's a need by the defense and particularly where they are unavailable, the documents are unavailable, this information is unavailable elsewhere.

So to the extent you are setting forth privileges that you think protect disclosure, just be aware that there's a balancing that needs to be done there.

So, Mr. Wolf, is that schedule amenable for you, again -- I should say, are you amenable to that schedule which, again, is 10 days for the requests, which will just be submitted to you, they don't need to be filed, and then 30 days for a meet-and-confer and disclosure of documents you don't object to to the defense, and ones you do object to, you would submit in camera with your bases?

And the bases for not disclosing that can be filed publicly so the defense can respond to that, but the documents, themselves, can just be delivered in camera.

Mr. Wolf, does that sound like a reasonable schedule?

MR. WOLF:  Yes, Your Honor.

THE COURT:  Okay.  Ms. Verheyden-Hilliard?

MS. VERHEYDEN-HILLIARD:  Thank you, Your Honor.

THE COURT:  Let's pick those actual dates then.  So we will say February 12 is the date for the defense discovery requests.  March 16 then will be the due date for government production to the defense and/or in camera submissions.

And why don't we say then March 30, Ms. Verheyden-Hilliard, for any defense response regarding the government's position on withholding.

MS. VERHEYDEN-HILLIARD:  Thank you, Your Honor.

THE COURT:  And then if I need to have a hearing on those documents, we can have one potentially.  We could also proceed to evidentiary.  We will see what's necessary.  But I don't want to map out a full schedule which we may never get to.  Okay?

Anything else then for the defense this morning?

MS. VERHEYDEN-HILLIARD:  Not from the defense.  Thank you.

THE COURT:  Mr. Wolf?

MR. WOLF:  Not from the government.  Thank you.

THE COURT:  Thanks very much, everyone.  Look forward to seeing your submissions.

(The hearing concluded at 10:12 a.m.)

- - -

C E R T I F I C A T E


        I hereby certify that the foregoing is an accurate

transcription of the proceedings in the above-entitled

matter.



2/3/26                          s/ Tammy Nestor
                                Tammy Nestor, RMR, CRR
                                Official Court Reporter
                                333 Constitution Avenue NW
                                Washington, D.C. 20001
                                tammy_nestor@dcd.uscourts.gov